EDWARD Y. KIM
Acting United States Attorney
Southern District of New York
By:     DANIELLE J. MARRYSHOW
         AMANDA LEE
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel. Nos. (212) 637-2689/2781

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA,

                Plaintiff,

        -against-

LETTIRE CONSTRUCTION CORP.;
LETTIRE 124TH STREET LLC; UBC
CHESTNUT COMMONS LLC; UBC
SUMNER LLC; EAST 124TH STREET LLC;
CHESTNUT COMMONS HOUSING
DEVELOPMENT FUND CORP.; and MHANY
MANAGEMENT, INC.,

                Defendants.

**COMPLAINT**

25 Civ. 483 (    )

---

Plaintiff the United States of America (the "United States") alleges as follows:

1.    This action is brought by the United States to enforce the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 (the "Fair Housing Act" or the "FHA"), 42 U.S.C. §§ 3601–3619. As set forth below, the United States alleges that defendants Lettire Construction Corp. ("Lettire"); Lettire 124th Street LLC ("Lettire 124th Street"); UBC Chestnut Commons LLC ("UBC Chestnut"); UBC Sumner LLC ("UBC Sumner"); East 124th Street LLC ("East 124th St."); Chestnut Commons Housing Development Fund Corporation ("Chestnut Commons HDFC"); MHANY Management, Inc. ("MHANY"); and (together, "Defendants"), acting directly as developers, owners, managing

members, and/or a general contractor, have unlawfully discriminated against persons with disabilities under the FHA by failing to design and construct covered multi-family dwellings — including the Tapestry in Manhattan, Chestnut Commons in Brooklyn, and Atrium at Sumner in Brooklyn — so as to be accessible to persons with disabilities.

## Jurisdiction and Venue

2.   This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. § 3614(a).

3.   Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c) because defendants do business and operate in this District, because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in this District, and because certain of the properties that are the subject of this action are located in this District.

## The Properties at Issue

4.   The Tapestry is a 12-story residential apartment complex located at 245 East 124th Street in Manhattan, designed and constructed for first occupancy in 2009. The Tapestry contains 185 rental units and has elevator access. The public and common features at the Tapestry include, *inter alia*, a lobby, a fitness center, and a bicycle storage room.

5.   Chestnut Commons is a 14-story residential apartment complex located at 3269 Atlantic Avenue in Brooklyn, designed and constructed for first occupancy in 2022. Chestnut Commons contains 275 units and has elevator access. The public and common features of Chestnut Commons include, *inter alia*, a gym, community room, second-floor terrace, laundry room, and bike storage.

6.   Atrium at Sumner is a 10-story rental complex located at 57 Marcus Garvey Boulevard in Brooklyn, designed and constructed for first occupancy in 2023. The public and

common features of Atrium include, *inter alia*, an interior atrium garden, laundry rooms, a multi-purpose community room, a library/computer room, bicycle storage room, and exercise room.

7. The rental units at the Tapestry, Chestnut Commons, and Atrium are "dwellings" within the meaning of 42 U.S.C. § 3602(b) and "dwelling units" within the meaning of 24 C.F.R. § 100.201.

8. The rental units at the Tapestry, Chestnut Commons, and Atrium accordingly are "covered multi-family dwellings" within the meaning of 42 U.S.C. § 3604(f)(7) and 24 C.F.R. § 100.201, and these complexes are subject to the accessibility requirements of 42 U.S.C. § 3604(f)(3)(C) and 24 C.F.R. § 100.205(a), (c).

### **Defendants' Development and Construction of Covered Multifamily Dwellings**

9. Defendant Lettire was the general contractor for the Tapestry, Chestnut Commons, and Atrium. In this capacity, defendant Lettire participated in the design and construction of these rental complexes as well as other covered multifamily dwellings such as 915 Broad Street, a 84-unit rental complex in downtown Newark, New Jersey that was completed in 2020, The Graham, a 96-unit rental complex in the Bronx that was completed in 2018; the Parkline, a 254-unit rental complex in Brooklyn that was completed in 2015; and Via Verde, a 222 unit complex in the Bronx that was completed in 2011.

10. Defendant Lettire 124th Street was a co-developer of the Tapestry. In this capacity, defendant Lettire 124th Street participated in the design and construction of the Tapestry.

11. Defendant UBC Chestnut was a co-developer of Chestnut Commons. In this capacity, defendant UBC Chestnut participated in the design and construction of Chestnut Commons.

12. Defendant UBC Sumner was the co-developer and is the managing member of Atrium. In this capacity, defendant UBC Sumner participated in the design and construction of each rental complex.

13. Defendant East 124th St. is the owner and managing member of The Tapestry. In this capacity, defendant East 124th St. participated in the design and construction of that rental complex.

14. Defendant Chestnut Commons HDFC is the owner of Chestnut Commons. In this capacity, defendant Chestnut Commons HDFC participated in the design and construction of that rental complex.

15. Defendant MHANY is the managing member of Chestnut Commons. In this capacity, defendant MHANY participated in the design and construction of that rental complex.

### Inaccessible Conditions at the Properties at Issue

16. Defendants participated in the design and construction of the Tapestry, Chestnut Commons, and Atrium rental complexes, which are or were inaccessible to persons with disabilities.

17. Specifically, the Tapestry was designed and constructed with numerous inaccessible conditions that include, but are not limited to, the following:

   a. Excessively high counter at the sign-in desk in the lobby;

   b. Excessively high thresholds at the entrance to the outdoor terrace;

   c. Mailboxes mounted too high to accommodate persons who use wheelchairs;

   d. Insufficiently wide doors to terraces from individual units;

   e. Excessively high thresholds at doorways to bathrooms in individual units;

   f. Insufficient clear floor space in bathrooms in individual units;

   g. Insufficiently wide maneuvering space within kitchens in individual units; and

   h. Inaccessible location of environmental controls in individual units.

18. Similarly, Chestnut Commons was designed and constructed with numerous inaccessible conditions that include, but are not limited to, the following:

a. Excessively high threshold at doorway leading to the second floor terrace and the fitness center;

b. Excessively high environmental controls and insufficiently insulated pipes in the resident lounge;

c. Excessively high environmental controls and insufficiently insulated pipes in individual units; and

d. Insufficiently wide maneuvering space within kitchens in individual units.

19. Similarly, Atrium was designed and constructed with numerous inaccessible conditions that included, but are not limited to, the following:

a. Angled walls protruded into the path of circulation;

b. Excessively high threshold at doorway at building entrance, bicycle storage area, and community room exterior exit;

c. Shower seats in bathrooms in individual units too far from the back wall of the shower; and

d. Insufficiently insulated pipes in common laundry rooms and accessible restrooms in individual units.

20. Defendant Lettire retained an accessibility consultant in connection with the design and construction of the Atrium. And at the time Atrium opened in 2024 the conditions identified in paragraph 19 above were in the process of being substantially remedied in consultation with the Government.

21. In light of the inaccessible conditions identified in paragraphs 17 to 19 above, Defendants failed to comply with the applicable FHA accessible design and construction provisions in designing and constructing the Tapestry, Chestnut Commons, and Atrium. In addition, Defendants also failed to comply with applicable State and local design and construction provisions, such as New York City Local Law 11 of 2008, in designing and constructing the Tapestry, Chestnut Commons, and Atrium.

## **Fair Housing Act Claims**

22. The United States re-alleges and incorporates by reference the allegations set forth in paragraphs 1–21 above.

23. Defendants each violated 42 U.S.C. § 3604(f)(3)(C) and 24 C.F.R. § 100.205(c) by failing to design and construct covered multi-family dwellings in such a manner that:

   a. the public use and common use portions of the dwellings are readily accessible to and usable by persons with disabilities;

   b. all doors designed to allow passage into and within the dwellings are sufficiently wide to allow passage by persons who use wheelchairs for mobility; and

   c. all premises within such dwellings contain the following features of adaptive design:

      i) an accessible route into and through the dwelling;

      ii) light switches, electrical outlets, thermostats, and other environmental controls in accessible locations; and

      iii) usable kitchens and bathrooms, such that an individual using a wheelchair can maneuver about the space.

24. Defendants, through the actions and conduct referred to in the preceding paragraph, have:

   a. Discriminated in the sale or rental of, or otherwise made unavailable or denied, dwellings to buyers or renters because of a disability, in violation of 42 U.S.C. § 3604(f)(1) and 24 C.F.R. § 100.202(a);

   b. Discriminated against persons in the terms, conditions, or privileges of the sale or rental of a dwelling, or in the provision of services or facilities in connection

   with a dwelling, because of a disability, in violation of 42 U.S.C. § 3604(f)(2) and 24 C.F.R. § 100.202(b); and

  c. Failed to design and construct dwellings in compliance with the accessibility and adaptability features mandated by 42 U.S.C. § 3604(f)(3)(C) and 24 C.F.R. § 100.205.

25. Defendants conduct alleged above constitutes:

  a. A pattern or practice of resistance to the full enjoyment of rights granted by the Fair Housing Act, 42 U.S.C. §§ 3601–3619; and/or

  b. A denial to a group of persons of rights granted by the Fair Housing Act, 42 U.S.C. §§ 3601–3619, which raises an issue of general public importance.

26. Persons who may have been the victims of Defendants' discriminatory housing practices are aggrieved persons under 42 U.S.C. § 3602(i) and may have suffered injuries as a result of its conduct alleged above.

27. Defendants' discriminatory actions and conduct alleged above were intentional, willful, and taken in disregard for the rights of others.

## Prayer for Relief

WHEREFORE, the United States prays that the Court enter an order that:

(1) Declares that Defendants' policies and practices, as alleged herein, violate the Fair Housing Act;

(2) Enjoins Defendants, including their officers, employees, agents, and all other persons in active concert or participation with any of them, from:

  a. Failing or refusing to bring the dwelling units and the public use and common use areas at covered multi-family dwellings, that Defendants have designed, developed, and/or constructed into compliance with the FHA;

      b. Failing or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, persons harmed by Defendants' unlawful practices to the position they would have been in but for the discriminatory conduct;

      c. Designing and/or constructing any covered multi-family dwellings in the present and future that do not comply with requirements of the FHA;

      d. Failing or refusing to conduct a compliance survey at covered multi-family housing complexes that Defendants have designed, developed, and/or constructed to determine whether any retrofits ordered have been made properly; and

(3) Awards appropriate monetary damages, pursuant to 42 U.S.C. § 3614(d)(1)(B), to each person harmed by Defendants' discriminatory conduct and practices; and

(4) Assesses a civil penalty against each defendant who participated in the design and construction of a covered multifamily property within the past five years, in an amount authorized by 42 U.S.C. § 3614(d)(1)(C) to vindicate the public interest.

The United States further prays for such additional relief as the interests of justice may require.

                                        MERRICK B. GARLAND
                                      Attorney General of the United States

                                        KRISTEN CLARKE
                                        Assistant Attorney General
                                        Civil Rights Division

Dated:   New York, New York
           January 16, 2025

                                        EDWARD Y. KIM
                                        Acting United States Attorney


                                By: */s/ Danielle J. Marryshow*
                                        DANIELLE J. MARRYSHOW
                                        AMANDA LEE
                                        Assistant United States Attorneys
                                        86 Chambers Street, 3rd Floor
                                        New York, New York 10007
                                        Tel. Nos. (212) 637-2689/2781
                                        Danielle.Marryshow@usdoj.gov
                                        Amanda.Lee2@usdoj.gov